## No. 12,986.

MISS JULIA SCHWENCK VS. MRS. WILHELMINA C. SCHWENCK.

52 239
114 397

### SYLLABUS.

1. *Possessors in bad faith.* Persons are in bad faith who impose upon the courts and, under false averments, have themselves put in posseession of property of which they are only part owners.

Schwenck vs. Schwenck.

2.  *Rents and Rerenues.* Possessors in bad faith must pay all the rents due up to the judgment and its execution against them.

3.  *The heirs estopped and therefore affected by the bad faith.* One who holds lands under a testamentary inheritance is bound by the estoppel that would stop the *de cujus* himself.

4.  *Obligations not in solido.* The testamentary heir is charged with rents and revenues due by the succession of the testator, but not with rents and revenues due by one who was a joint possessor with the testator of an interest of which they were not owners, for as to him, they are not bound *in solido.* Being part owners of the property, they were not trespassers bound *in solido,* though in bad faith.

5.  *Taxes, Insurance, Mortgage.* The possessors, though in bad faith, are entitled to taxes, insurance, and mortgages on the property paid by them.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*James B. Rosser, Jr.,* for Plaintiff, Appellee.

*Dart & Kernan* for Defendant, Appellant.

The opinion of the court was delivered by

BREAUX, J.  Plaintiff, claiming to be the owner of a three-sixteenth interest in a lot and improvements, situated in New Orleans, brought a petitory action to recover her interest, together with an action for the partition of the property and for rents and revenues.

The property was bought by Jacob and John Schwenck in 1873.

John Schwenck died in June, 1874, intestate and unmarried, leaving as his heirs. Nicholas Schwenck, his father, Jacob Schwenck, his brother of the full blood, and Julia Schwenck, his sister of the half-blood, petitioner in this suit, who was a child (nine years old) of Nicholas Schwenck by a second marriage.

The succession of John Schwenck was opened in 1874 by Nicholas Schwenck, the father, and Jacob Schwenck, the brother, who chose to ignore that plaintiff was an heir.  They alleged and swore that Jacob Schwenck left no other heirs than themselves, and obtained judgment putting them in possession.

In 1879, Nicholas Schwenck sold his interest, inherited as just stated, to Jacob Schwenck.

After the death of Jacob Schwenck, his widow and testamentary heir brought a suit against her co-heirs, children of Jacob Schwenck, claiming title to one-third of the property, and praying for a partition,

and, under the sale made in accordance with the decree of court, she became the owner.

In her answer, defendant alleges that she has been in undisturbed possession of the entire property since her purchase, on — October, 1892, from the succession and the heirs of Jacob Schwenck; that the sale was made under a judgment of partition; that the deed to her was the confirmation of the sale at public auction; and that the proceeds of the sale were distributed among the heirs of Jacob Schwenck by an act of partition.

She also avers that the property had been in her husband's possession for many years before his death, and no one ever questioned his title or disturbed his possession.

She charges that the plaintiff knew of those proceedings; that, if she had rights, she wilfully permitted respondent, the present owner, to make a purchase of the property and pay therefor, and that, in consequence, she is estopped.

The defendant, as executrix, sought to intervene in the suit, averring that John Schwenck died insolvent; that there was due on the property a mortgage placed thereon by the joint owners, Jacob and John Schwenck, amounting to six thousand, six hundred dollars, with 8 per cent. interest from November 9th, 1873, and which should be paid by the plaintiff, should there be judgment in her favor. The plaintiff objected to this intervention, and pleaded an estoppel on the ground that petitioner, in her answer, averred that the estate was partitioned, and that, in consequence, the duty of executrix was at an end, and that she could no longer have a standing in court. The estoppel was sustained and the intervention dismissed. Subsequently, the judgment condemned the plaintiff to refund her *virile* share of that debt as had been prayed for in the dismissed intervention.

The District Court, in its decree, recognized Julia Schwenck as the owner of an undivided three thirty-seconds interest in the property in common with Wilhelmina Schwenck as owner of an undivided twenty-nine thirty-seconds interest; ordered a sale of the property at public auction to effect a partition, fixed the rent of the property at sixty dollars ($60.00) per month from August 27th, 1874, to January 1st, 1880, and at forty dollars ($40.00) per month thereafter until a sale, as ordered, and on the other hand the decree condemned the plaintiff to pay an amount due on the property which was paid by defendant or her authors.

From that judgment, defendant prosecutes this appeal.

The evidence shows that Julia Schwenck, the plaintiff, became the owner, by inheritance from her brother John Schwenck, of a three-thirty-second interest in the property. This is not seriously contested by the defendant, whose defense is chiefly directed against plaintiff's averment of her bad faith. She contends, in support of her good faith as an owner, that she was not aware of the defect in the title, but that, on the contrary, the sworn declaration of her husband and of the father of the plaintiff, in their application for the opening of the succession of John Schwenck and its settlement, was enough to warrant her in the belief that the title offered, when the property was offered at public sale, was good and valid.

Mrs. Schwenck, the defendant, was not a third person, and is not protected as a third person would be by the sale at public auction to effect a partition. The funds, proceeds of the sale, were distributed among the heirs of Jacob Schwenck. In this distribution, Mrs. Schwenck, the defendant, was included, and received her portion, viz: One-third.

Obviously, Nicholas Schwenck and Jacob Schwenck were not possessors in good faith. The former concealed the fact that Julia, the plaintiff here, was his daughter, and the latter concealed the fact that she was his sister, of the half blood, and together they sought to obtain a title which was null and void, in so far as she was concerned. These parties could not gain an advantage by such acts. "No man should derive any benefit from his own wrong," is a familiar maxim. *Nul prendra advantage de son tort demesne,* 2 Just., 713. We pass from the case of the two authors of the defendant's title fully convinced that as to them there is not the ground upon which to base a decision sustaining the title in opposition to plaintiff's claim.

This brings us to the claim of the defendant that she had no knowledge of the heirship of plaintiff, and that she is protected by the proceedings of partition to which we have already referred, and in which she took part as a purchaser of property and as an heir.

She stands in the shoes of her ancestor in title.

She can not be heard to urge that he was in good faith, nor can she, in her defence, sustain the position that she can not be held for rent and revenues because she had no knowledge of the defect in the title. We must hold that she had cognizance of the action taken by one from whom she inherited, and that knowledge had the effect of rendering

her possession one in bad faith from its inception. It has always been held, as relates to the title to real property and its possession, that heirs can not be heard when they set up in their own defence that which equity and good conscience would not permit the one from whom they inherit to set up as a defence. Armorer vs. Case, 9th Ann., 242.

If one is estopped, those claiming under him as heirs are estopped. One to whom the defects of title are known is not a *bona fide* possessor. Heirs of Dohan vs. Murdock, 41 Ann., 494; C. C., 503.

The following is laid down as correct: If the title discloses facts which show the person from whom it was acquired had no title, it can not form the basis of a right. Frique vs. Hopkins, 4 N. S., 221.

The *de cujus* was fully aware of the relation existing between his son, John Schwenck, and his daughter, the plaintiff, and of this fact we are bound to hold that defendant also had knowledge. This being the condition, it necessarily follows that the defendant was also a possessor in bad faith. She, it must be held, was a purchaser with notice, and she acquired only such right as her ancestor in title had.

There was no error of fact, in that the parties must be held to have been informed of all the facts. C. C., Art. 1821.

As relates to any question of law, it is not of such a character as to enable the defendant to avail herself of it.

The case is entirely within the principles laid down in one of the cases of this court.

"However much the commentators of the Roman law have differed, the one from the other, and the same person from himself, at different times, on the subject of mistakes of law, they seem to agree in this, that *juris error* is never a good foundation for acquiring property." Francois vs. Delaronde, 8 M., 619.

In the case cited by the defendant in support of her defence, Hutchinson vs. Jamison, 38th Ann., 150, the court said: "As said before, there was sufficient reason for an honest belief on her part that she was the sole owner of the property." It is different from the case here, we have seen, in which the defendant is estopped from recovering as owner.

This brings us to a consideration of the respective claims of the parties, not immediately growing out of the question of title to the property.

Mrs. Wilhelmina Schwenck sustained her contention by proof that her late husband, Jacob Schwenck, owner of the property at the time,

as before stated, paid a mortgage of six thousand dollars and interest bearing on the property in which plaintiff claims and owns an interest. Under her testamentary inheritance from her husband, the defendant is entitled, as a creditor, to three-thirty-seconds thereof, extent of her interest.

On the other hand, as relates to the rental claimed by plaintiff, the defendant contends that she should not be held bound to pay one-third of the revenues for a period anteceding her marriage eight years. She, it follows, should be charged to the extent of her interest as a legatee with corresponding proportionate amount due by the succession of her late husband.

It appears that when John Schwenck died, the property was encumbered by a mortgage of six thousand dollars ($6,000). As defendant represents the succession of Jacob Schwenck to the extent of one-third, plaintiff is liable to her in proportion to her interest for the said amount, also in the same proportion for taxes and premiums of insurance.

Defendant, though a possessor without title owing rents and revenues, is not, as we think, the debtor of the plaintiff for the rent and revenues due by the late Nicholas Schwenck, who was the father of plaintiff.

Possessors in bad faith, under the circumstances, are not indebted *in solido* for rents and revenues, and, consequently, Jacob Schwenck is indebted for them only to the extent that he was the owner of the property. They, Nicholas and Jacob Schwenck, each had an interest in the property other than the interest of plaintiff. They were placed in possession by an order of court, and, after these many years, are not to be considered in the light of mere trespassers bound *in solido* for rents and revenues. It follows that the amount should be reduced to one-third of three-thirty-seconds of three-fourths of the revenue prior to 1879.

The question of intervention noted in our statement of the facts is no longer of any importance, as the intervenors were allowed, in the judgment, all the rights they would have received if the intervention had been filed. We, therefore, pass it over without further comment.

Defendant's complaint regarding the interest allowed on the fruits found due, we think, is answered by citing Vincent vs. Phillips, 47th Ann., 1243.

To the extent indicated by the foregoing, the judgment is amended.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be and the same is hereby amended by allowing one-third of three-thirty-seconds of three-fourths of the revenues prior to 1879, instead of one-third of three-thirty-seconds of the revenues prior to 1879, and, as thus amended, the judgment is affirmed at appellee's cost.

MONROE, J., takes no part, having decided this case in the court of first instance.