(139 So. 18)

**FEDERICO et al. v. NUNEZ et al.**
No. 30841.

Nov. 30, 1931.

Rehearing Denied Jan. 4, 1932.

958

Delvaille H. Theard, of New Orleans, for appellants.

Emmet Alpha, of New Orleans, for appellees.

OVERTON, J.

This action was commenced as one for slander of title. It is set forth in the petition that plaintiffs, who are the widow and

children of Lorenzo Federico, deceased, from whom they acquired the property, involved herein, consisting of four squares of ground in the parish of St. Bernard, with the improvements thereon, have been in the actual possession of the property for more than one year, and that defendants have disturbed their possession and slandered their title by calling upon them and their tenant either to vacate the property or pay rent to them.

Defendants, in their answer, converted the action into a petitory action, by alleging themselves to be the owners of the property by virtue of a tax sale made to them on July 6, 1925, by the tax collector of the parish of St. Bernard, for the taxes of 1924, due thereon by Lorenzo Federico, the tax debtor, and recorded in the conveyance records of that parish on August 3, 1925.

On December 21, 1928, the case was called for trial, and on the same day defendants filed pleas of peremption of six months and of three years. On the trial, the district judge, being of the opinion that the peremption of six months was well founded, excluded the evidence sought to be introduced by plaintiffs to show the invalidity of the tax title, and maintained the peremption, and recognized defendants as the owners of the property. On appeal, this court reversed the judgment of the trial court, and remanded the case to be proceeded with according to law, the court being of the opinion that there had been no such compliance with Act No. 101 of 1898 as to make the peremption of six months appropriate, and as to the peremption of three years the court found it was inadvisable to consider it, because there were not sufficient facts in the record to enable it to do so. Federico v. Nunez, 168 La. 914, 123 So. 618.

When the case reached the trial court, plaintiffs, acting upon the theory that a defendant in an action of slander of title, who, in his answer thereto, sets up title in himself, converts the action into a petitory action, in which he becomes the plaintiff, treated the answer as a petition in a petitory action, and filed an answer thereto. In this answer, plaintiffs attack the tax sale as null on two grounds, one of which is that notice of intention to sell the property for the payment of the taxes was not given to plaintiffs, and the other is that the property was adjudicated to defendants for an amount less than the taxes, interest, penalties, and costs, due upon it, at the time of the adjudication. In a supplemental answer, plaintiffs averred that defendants were members of road district No. 1, which assessed part of the taxes for which the sale was made, and that the sale was null for that reason, under the provisions of Act No. 94 of 1902.

On the trial of the case, under the issues thus made up, judgment was rendered in favor of defendants, sustaining the peremption of three years, and dismissing plaintiffs' demand. It is this judgment that is now before us on appeal.

Since the peremption of three years, if it be found to have been correctly sustained, cuts off all inquiry into the alleged defects in the tax sale, it is properly the first plea submitted to be considered.

The peremption of three years, originating in article 233 of the Constitution of 1898, and carried into section 11 of article 10 of the Constitution of 1921 with some slight modifications, does not operate to destroy a cause of action to annul a tax sale while the property sold is in the actual possession of the tax debtor or his transferee. Carey v. Cagney, 109 La. 77, 33 So. 89. Such being the law, it is necessary to inquire into the question of possession of the property.

The property, for some time prior to the tax sale, was in the actual possession of the tax debtor, Lorenzo Federico, until his death in 1915, when it passed into the hands of his widow and children, the plaintiffs in the slander of title suit, who continued in the actual possession of the property through tenants. The property was used largely for agricultural purposes. It was fenced and had improvements on it, such as a dwelling house, which was destroyed by fire prior to the tax sale, a barn, and other similar structures. Prior to the tax sale, members of the Federico family spent week-ends on the property, and apparently visited it some thereafter. A few months prior to the sale, the tenant on the property vacated it, and the place assumed something of a dilapidated condition, but noticeably was not abandoned, for plaintiffs, immediately after the tenant left, erected a sign on the front of the property, advertising it for rent. This sign remained there until the property was rented, which was in July, 1926, about one year after the tax sale. Such was the condition of the property at the time of the tax sale, and for several months before and a year after the sale. The tenant, who took possession of the property, as plaintiffs' lessee, in July, 1926, was still in actual possession of it, when this case was tried, in June, 1930.

It has been held that the peremption of three years does not accrue if the owner at the time of the sale remains in corporeal possession of the property, but that it does accrue if the owner's possession is merely the civil possession flowing from a title deed, or the constructive possession following the termination of actual possession. Levenberg v. Shanks, 165 La. 419, 115 So. 641.

This rule is mentioned here, because of the fact that on the day of the tax sale, and for approximately twelve months thereafter, no one was actually occupying or using the property. While we are inclined to think that this circumstance, accidental in its nature, does not show a termination of the actual corporeal possession that plaintiffs had of the property, or that the interval between the possession of the two lessees must be considered as constructive possession, following actual possession, nevertheless we find it unnecessary to decide how that circumstance should be regarded.

It is unnecessary to decide what was the effect of that circumstance, because some sixteen months after the preceding tenant left the place, which was slightly less than a year after the recordation of the tax sale in the conveyance records, plaintiffs again leased the property, and plaintiffs, holding through the tenant, have been in the actual corporeal possession of the property, without interruption, up, at least, to the day of trial.

Therefore, since the peremption of three years does not begin its course until the recordation of the tax deed, as provided by section 11 of article 10 of the Constitution 1921, it is patent that, were we to consider the interval between the two leases as one of constructive possession only, during which the three-year peremption continues to run its course, nevertheless, only one year would have run, for, at the end of that time, the peaceful and undisturbed resumption of actual corporeal possession would operate to suspend the course of the peremption two years before its completion, and continue to do so up to, and through, the trial of the case. This is so, because the peremption does not accrue if, although the owner at the time of the sale was not in actual possession of the property, he peacefully takes possession of it before the required three years have elapsed, and holds possession thereof until he makes his attack upon the sale. The taking and

maintaining of possession, in these circumstances, is a continued protest against the sale before the peremption has accrued, and relieves the owner of the duty, otherwise falling upon him, of going out to seek his adversary to attack him. Kivlen v. Horvath, 163 La. 901, 113 So. 140.

In this view of the case, since plaintiffs made their attack before the peremption accrued, it is not important at what stage of the proceedings it should be considered as made whether in the petition for slander of title, or in their answer (if allowable) to the converted action, or (if that answer be not allowable on the theory that it is a replication) when they offered their evidence on the trial to show the defects of the sale.

The case of Lisso & Bro. v. Unknown Owner, 114 La. 392, 38 So. 282, cited by defendants to show that, where one purchases property, sold at tax sale, from one claiming to be owner, and takes possession about a year after the tax sale, such taking of possession has no effect upon the course of the peremption, does not sustain, in our view, the proposition for which it is cited. That case turned upon the point that one seeking to annul a tax sale, who was not the owner of the property, when it was sold at tax sale, and has not acquired it since, is without standing in court to attack the sale.

Defendants have also quoted short excerpts from numerous decisions of this court, intimating that to suspend the course of the peremption the owner must have had corporeal possession at the time of the tax sale. However, none of these cases so holds. The language used and relied upon was prompted by the facts of the particular cases under consideration, or of those cited in them. Our conclusion is that the plea of peremption of three years should be overruled.

Having reached the foregoing conclusion, we now come to the defects alleged to exist in the tax sale. One of these defects, as we have said, is the failure to give notice of intention to sell for the taxes due. There is no complaint of the fact that the assessment was made in the name of a dead person, as if such person were alive. In fact, there was no ground to base such a complaint upon, for, although Lorenzo Federico, the husband and father of plaintiffs, died some eight years before the assessment was made, no written notice of his death, and whether or not his succession had been opened, and, if opened, when and where, was given by the parties interested to the assessor. The assessment, therefore, although in the name of an owner, who died pending his ownership, was valid. Section 25 of Act No. 170 of 1898.

It does not follow from this, however, that notice, mailed to one who is dead, is a compliance with the law. The Constitution of 1921, under which the tax sale was made, provides that the tax collector, before proceeding with the sale, shall give "notice to the delinquent in the manner provided by law." Const. 1921, art. 10, § 11. The law, in obedience to this constitutional requirement, provides that printed or written notices, in the county parishes, shall be sent by the tax collector, by registered mail, to the "taxpayer." The word "delinquent," appearing in the Constitution of 1921, as also in similar phrases in preceding Constitutions, means the owner at the time of issuing the notice. Geddes v. Cunningham, 104 La. 306, 29 So. 138; Adsit v. Park, 144 La. 934, 81 So. 430. This interpretation has been adhered to ever since. Recker v. Dupuy, 161 La. 392, 108 So. 782.

The tax collector, in the case before us, sent notice, by registered mail, addressed to "Lorenzo Federico, New Orleans, La." No

street number was given. It does not appear whether the notice was returned to the tax collector or not, for some of his records, including returned notices, were destroyed in a flood. But be that as it may, while Federico was a resident of New Orleans at the time of his death and for some years prior thereto, nevertheless, as he was dead, he was no longer the owner of the property, but his widow and heirs were, and notice addressed to him was not notice addressed to them. Besides, it is obviously impossible to notify a dead person. A notice, addressed to a person who is dead, is equivalent to no notice at all. Our conclusion is therefore that the sale was made without giving the notice required by the Constitution and the laws of this state. Hence, the sale is null.

This conclusion is supported by the cases of Geddes v. Cunningham, 104 La. 306, 29 So. 138, which we deem especially pertinent, and also by Wilkerson v. Wyche, 158 La. 596, 104 So. 381; and Interstate Land Co., Ltd., v. Doyle, 118 La. 587, 43 So. 173. Each of these cases involve the giving of notice of intention to sell to a dead person, and the result reached is that such notice is a nullity.

It may be observed that, when the deputy tax collector, who had charge of the mailing of notices, mailed the notice to Federico, he mailed it to New Orleans by chance, for he did not know whether New Orleans was Federico's address or not, or anything about him. Had he consulted the tax rolls of the office for the previous year, he would have found that the taxes for that year had been paid, and the same would seem to be true as to the tax rolls of previous years. Had he consulted the files of the office, in an effort to ascertain with reasonable certainty the address of Federico, he should have found inquiries concerning the amount of taxes due on the property for past years, and also let-

ters inclosing remittances, addressed to the office by the Federico Macaroni Manufacturing Company, Inc., of 1000 Chartres street, New Orleans, or by one of the plaintiffs on that company's letterheads. The information thus gained should have led easily to all necessary information, including the death of Lorenzo Federico, and the names of those to whom notice should be sent. However, no serious effort was made to ascertain the required information, although it cannot be said that the means were not at hand. The proper effort in this instance was not made. Recker v. Dupuy, 161 La. 392, 108 So. 782.

The conclusion we have reached makes it unnecessary to consider the remaining two grounds of attack. The judgment must be reversed.

The judgment, appealed from, is set aside, and judgment is now rendered, annulling said tax sale, and ordering its inscription on the conveyance records canceled, the judgment not to become effective until the price paid at the tax sale, and all taxes thereafter paid by defendants on the property, with 10 per cent. per annum interest thereon from the dates of payment, be repaid them by plaintiffs, as provided by section 11 of article 10 of the Constitution of 1921; defendants to pay the costs in both courts.